**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 16-cv-2376-WJM-KMT

TONI R. PALMER,

    Plaintiff,

v.

KAISER FOUNDATION HOSPITALS TECHNOLOGY RISK OFFICE,

    Defendant.

---

**ORDER ADOPTING NOVEMBER 17, 2017 RECOMMENDATION OF
MAGISTRATE JUDGE AND GRANTING SUMMARY JUDGMENT**

---

This matter is before the Court on the November 17, 2017 Recommendation of

United States Magistrate Judge Kathleen M. Tafoya ("Recommendation," ECF No. 73)

that the Motion for Summary Judgment filed by Defendant, Kaiser Foundation Hospitals

Technology Risk Office (Defendant, or "Kaiser") (ECF No. 40) should be granted.  The

Recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B);

Fed. R. Civ. P. 72(b).  Plaintiff filed an objection to the Recommendation.  ("Objection,"

ECF No. 75), to which Defendant Responded (ECF No. 77).  For the reasons set forth

below, Plaintiff's Objection is overruled, the Recommendation is adopted, and

Defendant's Motion for Summary Judgment is granted.

## I.  STANDARD OF REVIEW

**A.      Rule 72(b) Standard**

When a magistrate judge issues a recommendation on a dispositive matter,

Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de*

*novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  An objection to a recommendation is properly made if it is both timely and specific.  *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.*  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*  Here, Plaintiff filed a timely objection to Judge Tafoya's Recommendation.  (ECF No. 77.)  Therefore, this Court reviews the issues before it *de novo*.[1]

## B.    Summary Judgment Standard

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the

---

[1] Defendant argues that Plaintiff's Objection is not sufficiently specific to permit review. (ECF No. 77 at 7.)  While there is some truth to this criticism of Plaintiff's Objection, the Court declines to simply reject Plaintiff's Objection on that basis, given her status as a *pro se* litigant. Rather, the Court addresses the points raised by Plaintiff's Objection in its analysis below.

evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

In addition, Plaintiff is proceeding *pro se*; thus, the Court must liberally construe her pleadings. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). The Court, however, cannot act as advocate for Plaintiff, who must still comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003).

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Factual Background

Neither party specifically objects to the recitation of facts in the Recommendation and the Court therefore adopts and incorporates the "Facts" section of the Recommendation as if set forth herein, while re-stating key facts below. (ECF No. 73 at 1–7.) To the extent Plaintiff's Objection raises additional facts, or characterizes them differently than the Recommendation, those issues are addressed in the Court's analysis of Plaintiff's Objection. *Infra*, Part III.[2]

---

[2] Plaintiff's Objection includes a section titled "Disputed Facts." (ECF No. 75 at 1–2.) However, this section contains no citations to evidence, as are required to assert that disputed facts make summary judgment improper. Fed. R. Civ. P. 56(c)(1). Moreover, this Section includes statements which the record as a whole shows to be uncontested, such as that Plaintiff

Plaintiff was employed by Kaiser as a senior case manager in the Technology Risk Office beginning March 31, 2015.  (ECF No. 1-1 at 2; ECF No. 73 at 1–2.)  She was the only African-American employee in her department.  (ECF No. 40-3 at 53–54; ECF No. 73 at 1.)  By May 2015, she reported to Natalie Henderson.  (ECF No. 40-1 ¶¶ 7–9.)  According to Ms. Henderson, Plaintiff's initial supervisor had by then already reported that Plaintiff's job performance was weak.  (*Id.* ¶ 8.)

On or around May 26, 2015, Plaintiff expressed concerns regarding a lack of clarity of her job responsibilities.  (ECF No. 1-1 at 2; ECF No. 75 at 1–2.)  On or around May 29, 2015, Ms. Henderson provided Plaintiff with a list of deficiencies with her job performance.  (ECF No. 40-1 ¶ 10; ECF No. 40-3 at 16–17.)[3]  Plaintiff then made a complaint to Kaiser's Human Resources Department, which Plaintiff describes as "[b]ased on discrimination and [Ms. Henderson's] aggressive behavior."  (ECF No. 40-3 at 11–12).  Around the same date, Plaintiff filed a Charge of Discrimination with the EEOC, alleging race-based discrimination and retaliation, claiming, among other things, that she had been denied the training provided to her co-workers, had been denied the option to "work off site," and "had [her] job tasks taken away."  (ECF No. 40-4.)  The EEOC issued a notice of right to sue on or around July 27, 2015, but Plaintiff did not

"was the only African-American in her department" (ECF No. 75 at 1), which Plaintiff herself testified was the case in her deposition (ECF No. 40-3 at 53–54).  The Court therefore does not treat this portion of Plaintiff's Objection as stating facts that are necessarily in dispute.  Instead, the Court relies on the record materials cited by both parties to determine which facts are genuinely disputed.  *See* Fed. R. Civ. P. 56(c)(1); WJM Revised Practice Standards III.E.4. (denial of claimed facts must be accompanied by a factual explanation and specific reference to materials in the record).

[3] All citations to docketed materials are to the page number found in the CM/ECF header, which sometimes differs from a document's internal pagination.

initiate a lawsuit in 2015.[4]

In September 2015, Ms. Henderson prepared Plaintiff's mid-year performance review, rating her as "2, Needs Improvement."  (ECF No. 40-1 at 4, ¶ 11.)[5]  Beginning no later than approximately September 2015, Plaintiff and Ms. Henderson began to have weekly one-on-one meetings.  (*See* ECF No. 40-1 ¶ 12.)  Plaintiff's claims in this lawsuit are based in large part on Ms. Henderson's conduct and demeanor towards Plaintiff during these meetings, which Plaintiff has variously described as "aggressive," "bullying," "very critical," "abrasive," and "very insulting."  (ECF No. 40-3 at 20, 53, 55.)[6]

According to Plaintiff, in October 2015, she informed a Vice President of her division that she could not be successful on Ms. Henderson's team, and she submitted a written complaint of racial discrimination to the same Vice President in November 2015. (*See* ECF No. 42 at 4–5 ¶¶ 4–5.)[7]  On December 8, 2015, Plaintiff e-mailed this Vice

---

[4] The documents in the present record do not establish the date when Plaintiff's 2015 EEOC charge was filed, nor when she received a right to sue letter, but the parties agree on these dates.  (*See* ECF No. 40 at 4, ¶¶ 11–12; ECF No. 42 at 2.)

[5] Neither party explains the performance review rating scale or cites to written documentation of this performance review.  However, the record includes a September 25, 2015 e-mail from Plaintiff referencing her "draft Performance Review," and acknowledging a "current rating of 'needs improvement.'" (ECF No. 75-3.)  The Court therefore finds it undisputed that Plaintiff received such a review as of September 2015.

[6] The parties appear to dispute how frequently these meetings actually occurred, or were canceled, and also whether their primary purpose was "to discuss specific tasks and projects [Plaintiff] needed to focus on and to identify areas of performance where [Plaintiff] could improve," as Ms. Henderson describes, or simply to discuss the status of work tasks, as Ms. Palmer indicates.  (ECF No. 40-1 ¶ 12; ECF No. 75 at 3.)  These disputes do not alter the outcome of the Court's analysis of Plaintiff's legal claims, and are therefore not "material facts" for purposes of summary judgment.  *See Anderson*, 477 U.S. at 248.

[7] Plaintiff made these allegations in her summary judgment opposition, without citing any materials in the record.  In her present Objection, Plaintiff attaches an e-mail she sent to the Vice President on November 16, 2016, which complains of Ms. Henderson's "constant destructive criticism," "repetitive negativity," and "belittl[ing]" Plaintiff.  (ECF No. 75-5.)

5

President and another Kaiser executive (copying Ms. Henderson), to report Ms.

Henderson's "abrasive, aggressive and threatening" communications with Plaintiff, that

"the animosity [Ms. Henderson] demonstrates . . . . is not warranted," and that Plaintiff

was "often fearful and intimidated to come to work due to the anxiety" caused by Ms.

Henderson's "corporate bullying."  (ECF No. 48-30; ECF No. 75-6--75-10.)  Plaintiff also

submitted a complaint to Kaiser HR on December 14, 2015.  (ECF No. 73 at 4.)

In addition to raising these complaints regarding Ms. Henderson's conduct,

Plaintiff applied internally to other positions not under Ms. Henderson's supervision.

Plaintiff testified that she applied for case manager and administrative assistant

positions, but she did not remember exactly when, who was making the hiring decisions,

or who filled any of the positions she applied for.  (ECF No. 40-3 at 48–49.)  On

September 29, 2015, Plaintiff e-mailed a Kaiser portfolio manager, Jennifer Thunblom,

regarding potential new openings resulting from a reorganization.  (ECF No. 48-3.)

However, according to Plaintiff, "a couple days later, Ms. Thunblom told her all of the

desired positions were either filled or candidates were already in mind."  (ECF No. 42 at

4, ¶ 2.)  An intermediate case manager position opened in October 2015, but Plaintiff

only applied for the position two months later, after the applicants had already been

interviewed.  (ECF No. 40-8; ECF No. 40-3 at 49.)

_____

However, this e-mail does not appear to have been submitted by Plaintiff in opposition to
Defendant's Motion, instead first being submitted with Plaintiff's Objection to the
Recommendation.  (*See* ECF No. 77 at 8.)  While issues not raised before the Magistrate
Judge are generally treated as waived, see *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir.
1996), the Court has discretion to consider issues not raised below.  *Lyons v. Jefferson Bank &
Trust*, 994 F.2d 716, 721 (10th Cir. 1993).  Here, even if the Court considers this e-mail, it does
not mention racial discrimination, or allege facts showing that Ms. Henderson directed abusive
behavior at Plaintiff because of her race, or treated Plaintiff differently than other employees.

In December 2015, Ms. Henderson reviewed Plaintiff's job performance for 2015 and on January 11, 2016, Kaiser placed Plaintiff on a Performance Improvement Plan ("PIP"), formally notifying her that her "performance is at an unacceptable level and you must show immediate and sustained improvement." (ECF No. 40-6 at 1.)  The PIP stated that its purposes were (1) to "formally notify [Plaintiff of the severity of the situation requiring [her] immediate action," (2) to "provide an outline of the necessary responses and behaviors," and (3) to "provide specific actions you must take." (*Id.* at 2.)  The PIP stated that failure to complete the assigned tasks within the prescribed time or to sustain performance improvement "may result in further disciplinary action, up to and including termination." (*Id.* at 4.)

The PIP was initially to run through mid-February 2016, but was extended through March 11, 2016.  (ECF No. 40-1 ¶ 18; ECF No. 75 at 2.)  During that period, Ms. Henderson reported Plaintiff's performance in a weekly tracking chart, concluding at the end of the period that Plaintiff did not meet expectations in three of four identified performance areas, and marginally met expectations in the in fourth.  (ECF No. 40-9 at 22–25.)  The day the PIP period concluded, March 11, 2016, Ms. Henderson scheduled a meeting with Plaintiff for March 24, 2016 to discuss the results.  (*See* ECF No. 40-11.)  Ms. Henderson indicates that she made the decision to terminate Plaintiff the next day, March 12, 2016, in consultation with her own supervisor and a Human Resources consultant, and decided then she would inform Plaintiff of the termination decision at their scheduled March 24 meeting.  (ECF No. 40-1 ¶ 22.)

However, Plaintiff did not come to work on March 23–25, 2016, sending e-mails to Ms. Henderson requesting sick days.  (ECF No. 40-10 at 2–4.)  On March 25, 2016,

Ms. Henderson granted Plaintiff's requests for sick leave and sent Plaintiff the final tracking chart for her PIP, noting "[a]s you can see, you did not successfully accomplish the Plan objectives," and indicating she would re-schedule their meeting "as soon as we can," or for no later than April 8, 2016. (ECF No. 40-11 at 2.) Plaintiff thereafter sought FMLA leave,[8] evidently making such a request no later than April 6, 2016, when a medical provider submitted paperwork to Kaiser in support of that request. (ECF No. 40-13.)

Plaintiff evidently returned to work on April 11, 2016. (ECF No. 40-12 at 2.) She was terminated by Ms. Henderson effective that same date. (ECF No. 40-12 at 2; ECF No. 40-14.) In processing her termination, Kaiser approved Plaintiff's request for FMLA leave and applied it retroactively to her last week of employment. (*See* ECF No. 40-12.) Plaintiff filed a second Charge of Discrimination with the EEOC on or around June 17, 2016, and received a right to sue letter on July 13, 2016. (ECF No. 48-12.)

## B. The Recommendation

The Recommendation initially noted that any claims arising from Plaintiff's 2015 EEOC charge are time-barred and that only claims of discrimination presented in her 2016 Charge may be pursued in this lawsuit. (ECF No. 73 at 8–9.) Plaintiff raises no viable objection to the Recommendation's analysis of these procedural issues, and the Court sees no error.

The Recommendation then set out the *McDonnell Douglas* burden-shifting framework under which Plaintiff's discrimination and retaliation claims must be

---

[8] *See generally* 29 U.S.C. § 2601 *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA").

analyzed, given the absence of direct evidence of discrimination. The Recommendation concluded that none of the claims arguably pled by Plaintiff can survive summary judgment.

      1.    <u>Title VII Race Based Discrimination Claims</u>

          a.    *Failure to Hire*

As to Plaintiff's claim of failure to hire her into other positions for which she applied, the Recommendation correctly noted that to establish a *prima facie* case, a plaintiff must show, among other elements, that she applied and was qualified for a job, and that after she was not hired, "the job remained open and defendant continued to seek applicants from persons with the plaintiff's qualifications." (ECF No. 73 at 10 (citing *Fischer v. Forestwood Co.*, Inc. 525 F.3d 972, 982–83 (10th Cir. 2008).) Given the facts summarized above (and further detailed in the Recommendation), Judge Tafoya concluded that even viewing the evidence in the light most favorable to Plaintiff, she cannot show that she actually applied for positions about which she only inquired. Further, the Recommendation held that "presuming, without deciding, that . . . [Plaintiff] applied for project manager and administrative assistant positions," she cannot establish a *prima facie* failure-to-hire case, because no evidence shows that the positions remained open and that Kaiser continued seeking other applicants with Plaintiff's qualifications after she was rejected. (ECF No. 73 at 11.)

          b.    *Termination*

As to Plaintiff's claim that her termination was the result of racial discrimination, the Recommendation concluded that even presuming Plaintiff has made out a *prima*

*facie* case, Defendant has proffered sufficient evidence of a legitimate reason for her termination—namely, Plaintiff's failure to meet job performance expectations—to return the burden to Plaintiff to show that this stated reason was pretextual. (ECF No. 73 at 14.) The Recommendation then found Plaintiff lacks evidence to show that Defendant's stated reason for termination was a pretext for discrimination. (*Id.* at 15.)

The Recommendation relied on the case law which establishes that the "inquiry is not whether Defendant's reason for discharging Plaintiff was 'wise, fair or correct,' but whether Defendant 'honestly believed those reasons and acted in good faith upon those beliefs.'" (*Id.* at 15 (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)). Reviewing the evidence raised by Plaintiff, the Recommendation found that Plaintiff had not presented evidence supporting her own assertion that she was treated differently from other employees, given that Plaintiff does not know whether other case managers in her department were similarly reprimanded by Ms. Henderson, nor whether other employees were performing at similar levels, to warrant similar performance or disciplinary measures. (*Id.* at 16–17; *see also* ECF No. 40-3 at 36, 54.)

As to Plaintiff's disputes regarding her job performance, the Recommendation observed that "[p]retext is not established by . . . some favorable comments . . . [or] some good evaluations," and that while Plaintiff disagrees with the assessment, she concedes that Ms. Henderson considered her job performance inadequate. (*Id.* at 18 (quoting *Perry v. St. Joseph Reg'l Med. Ctr.*, 110 F. App'x 63, 68 (10th Cir. 2004), and *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir.1992).)

2. Title VII  Retaliation Claims

As to retaliation, the Recommendation concluded that "Plaintiff has not met her burden as to the third element of her *prima facie* retaliation claim," that is, that Plaintiff lacks evidence of a causal connection between her protected activity (*i.e.*, raising complaints of discrimination), and the adverse employment action (*i.e.*, her termination). (ECF No. 73 at 21.) The Recommendation observed that the lapse of time between Plaintiff's complaints and her termination could not establish "temporal proximity" sufficient to permit an inference of causation. (*Id.*) Further, the Recommendation concluded that even assuming Plaintiff has made out a *prima facie* case of retaliation, she could not show that Kaiser's stated reasons for her termination were pretextual, based on the same review of the evidence that was fatal to Plaintiff's claim of discriminatory termination. (*Id.* at 21–22.)

3.    Title VII Hostile Work Environment Claims

As to Plaintiff's Title VII claim of a hostile work environment, the Recommendation observed that to prevail on this claim a plaintiff "'must show that the [workplace] harassment was racial or stemmed from racial animus,'" and that such claims are not actionable "'[i]f the nature of the plaintiff's work environment, however, unpleasant, is not due to [her] race.'" (ECF No. 73 at 22, 23 (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) *and Abiakam v. Qwest Corp.*, 2012 WL 1577438, at *11 (D. Colo. Apr. 12, 2012), *adopted*, 2012 WL 1576310 (D. Colo. May 4, 2012)). The Recommendation concluded that "[w]hile Plaintiff's description [of Ms. Henderson's hostile or bullying communications] certainly depicts an unpleasant work environment, she has not produced any evidence supporting an inference that the

unfavorable environment was due to her race."  (ECF No. 73 at 23.)

4. FMLA Claim(s)

As to Plaintiff's claim that Kaiser either interfered with her rights under FMLA or retaliated for her FMLA leave request, the Recommendation noted that "[i]n light of the fact Plaintiff's FMLA request was . . . approved, Plaintiff's interference claim primarily depends upon a finding that her termination was related to her FMLA request."  (*Id.* at 25.)  Because "it is undisputed in the record that Defendant had already made the decision to terminate Plaintiff . . . prior to her request for FMLA leave," the Recommendation concluded that Plaintiff could not prevail on a claim of interference with her FMLA rights.  (*Id.*)  The Recommendation also suggested this chronology makes it impossible for Plaintiff to show she was terminated in retaliation for an FMLA request made *after* the termination decision had already been made, but the Recommendation nevertheless held that for the same reasons previously analyzed as to Title VII, Plaintiff cannot prove that Kaiser's stated reasons for her termination were a pretext for a retaliatory discharge.  (*Id.* at 27–28.)

5. Age Discrimination Claims

The Recommendation concluded that Plaintiff's June 2016 EEOC Charge had not asserted an age discrimination claim, that Plaintiff therefore did not exhaust her administrative remedies for any such claim in the present lawsuit, and that in any event, Plaintiff effectively abandoned any claim of age discrimination by not addressing it in her summary judgment submissions.  (ECF No. 73 at 28.)

6. Intentional Infliction of Emotional Distress

To the extent Plaintiff asserts a tort claim for intentional infliction of emotional

12

distress (independently, or pursuant to the Federal Tort Claim Act), the

Recommendation noted that as a private employer, Kaiser cannot be sued pursuant to

the FTCA, and that she lacks evidence that could meet the high standard of showing

Kaiser "'engaged in extreme and outrageous conduct . . . recklessly with the intent of

causing the plaintiff severe emotional distress.'"  (ECF No. 73 at 29 (quoting *Han Ye*

*Lee v. Colo. times, Inc.*, 222 P.3d 957, 966-67 (Colo. App. 2009)).)

## III.  ANALYSIS

### A.    The Recommendation is Adopted in its Entirety

Having reviewed the Recommendation and the parties' submissions fully and *de*

*novo*, the Court finds no error in the Recommendation's analysis, and adopts the

Recommendation in its entirety.

In particular, the Court agrees that Plaintiff has not presented evidence which

can discharge her burden of showing that Kaiser's preferred reasons for her termination

were pretextual.  While it is plain that Plaintiff herself disagrees with Kaiser's evaluation

of her job performance, and her evidence could show that on some past occasions she

was praised for certain aspects of her job performance, that is not sufficient to prove

Kaiser's reasons for termination were merely a pretext for discrimination or retaliation.

As emphasized in the Recommendation, the relevant legal inquiry is not simply whether

the employer's actions were mistaken or reflected a poor business decision:

> Evidence that the employer should not have made the
> termination decision—for example, that the employer was
> mistaken or used poor business judgment—is not sufficient
> to show that the employer's explanation is unworthy of
> credibility.  In determining whether the proffered reason for a
> decision was pretextual, we examine the facts as they

13

> appear to the person making the decision, and do not look to
> the plaintiff's subjective evaluation of the situation.  Instead
> of asking whether the employer's reasons were wise, fair or
> correct, the relevant inquiry is whether the employer honestly
> believed those reasons and acted in good faith upon those
> beliefs.

*DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970–71 (10th Cir. 2017) (internal

quotation marks and citations omitted).  Plaintiff's evidence at most could show that

Kaiser's evaluation of her job performance was incorrect, unwise, or even unfair.  But

she does not have evidence to raise any genuine dispute that Kaiser disbelieved its

own assessment of Plaintiff's job performance or used it merely as a pretext for

discrimination.

As to Plaintiff's claims regarding Ms. Henderson's hostile, bullying, or improper

conduct, the Court also agrees with the Recommendation that Plaintiff's description of

the manner of Ms. Henderson's communications depicts an unnecessarily unpleasant

work environment and perhaps even abusive management.  (*See* ECF No. 73 at 23.)  If

the issue were merely whether Plaintiff was poorly treated, then Plaintiff would, at a

minimum, have raised a triable question of fact on that issue.  But absent evidence that

*because of her race* Plaintiff was treated differently than her co-workers, or was

subjected to a hostile work environment, evidence of general mistreatment of an

employee does not present an actionable claim under Title VII.  *See Dick v. Phone*

*Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005) ("Title VII is not 'a general civility

code for the American workplace.'" (quoting *Oncale v. Sundowner Offshore Servs., Inc.*,

523 U.S. 75, 80 (1998)); *Bolden*, 43 F.3d at 551 ("General harassment if not racial or

sexual is not actionable."); *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir.

14

1994) ("If the nature of an employee's environment, however unpleasant, is not due to her [race] she has not been the victim of [race] discrimination as a result of that environment.").

**B.    Plaintiff's Additional Objections**

Having reviewed the Recommendation and concluded it should be affirmed in its entirely, the Court addresses in turn several issues raised by Plaintiff's Objection.

1.    <u>Rule 7.1(a) Conferral</u>

Plaintiff argues the Court should deny Summary Judgment because Defendant "did not fulfill the requirements and purposes of Local Rule 7.1A," which, in general, requires counsel to "confer or make reasonable good faith efforts to confer" before filing a motion.  D.C.COLO.LCivR 7.1(a).  However, the  Rule does not apply to motions seeking summary judgment under Federal Rule of Civil Procedure 56. D.C.COLO.LCivR 7.1(b)(3).  Any failure to confer therefore does not provide a reason to deny Defendant's Motion for Summary Judgment.

2.    <u>Deposition Errata Sheet</u>

Plaintiff objects that "[d]iscovery had not concluded" when Defendant filed its Motion for Summary Judgment, attaching excerpts of Plaintiff's deposition transcript, and that these materials were docketed before Plaintiff returned an errata sheet claiming 25 errors in the transcript.  (ECF No. 75 at 2; ECF No. 40-3; ECF No. 67-4.) However, Plaintiff does not explain how any of the 25 corrections claimed on the errata sheet demonstrate an error in the Recommendation or provide reason to deny summary judgment.  From the Court's review, the deposition excerpts cited in

Defendant's Motion do not include any of the page and line citations where Plaintiff claims the reporter made an error. (*Compare* ECF No. 40-3 *with* ECF No. 67-4.) This objection therefore does not provide a reason to reject the Recommendation.[9]

### 3. Settlement Issues

Plaintiff also objects that she was surprised by Judge Tafoya's Recommendation, claiming Judge Tafoya had advised Kaiser that it should settle this case at the Final Pretrial Conference. Having reviewed the audio recording of that conference, the Court cannot agree that Judge Tafoya's comments encouraging both parties to engage in settlement communications amounted to either an opinion that Kaiser should settle the case, or any comment on the merits of Plaintiff's claims. In any event, finding no error with the Recommendation, this provide no reason to deny summary judgment.

Plaintiff also objects that "[o]pposing [c]ounsel kept trying to coerce Plaintiff into agreeing settlement negotiations had taken place when in fact none had." (ECF No. 75 at 3.) The Court is aware that the parties have disagreed as to whether or not their prior communications reflected true settlement communications. (*See* ECF No. 69 at 18–19.) However, this dispute does not alter the merits of Plaintiff's claims, nor whether she has brought forth sufficient evidence to defeat summary judgment.

---

[9] Since Plaintiff's errata sheet corrections do not impact the Court's analysis, there is no occasion to evaluate whether they reflect the permissible correction of stenographic errors or offer impermissible substantive changes to deposition testimony. *See BancFirst v. Ford Motor Co.*, 422 F. App'x 663, 666 (10th Cir. 2011) ("adopt[ing] a restrictive view of the changes that can be made pursuant to Rule 30(e) and tak[ing] a dim view of substantive alteration of deposition testimony") (citing *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002)).

4.    Information Given to Plaintiff About Her Job Performance

Plaintiff raises several factual contentions which the Court views as raising an objection that Plaintiff was not always timely provided with relevant information about her job performance evaluations, that the reasons Kaiser found her performance deficient were misguided, or that Kaiser deviated in various ways from the proper performance review procedures. For example, Plaintiff alleges she "never received a mid-year or end-of-year review," that when she asked for a meeting with Ms. Henderson to explain why her job performance was rated "2—Needs Improvement" as of September 2015, no such meeting was scheduled, and that as to what appears to be an unsigned draft of a 2015 annual performance review, "Plaintiff had never seen this document prior to discovery" in this lawsuit.  (*See* ECF No. 75 at 3, 4.)[10]

On many of these points, Plaintiff's Objection does not cite any evidence, making it insufficient to defeat summary judgment.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").

Moreover, even crediting Plaintiff's factual contentions (or treating her *pro se* filings themselves as "materials in the record"), there is no genuine dispute that Kaiser, particularly Ms. Henderson, viewed Plaintiff's job performance as deficient for a sustained period of time, and that Plaintiff knew as much, beginning no later than May 2015 and continuing through the time of her termination.  Since it is clear that Plaintiff

---

[10] Plaintiff also claims that as of June 2015 "[t]here were no comments concerning [her] performance or explaining how the rating of 2 needs improvement was derived" (ECF No. 75 at 3), and that she was asked for the names of colleagues to participate in her performance review in an untimely fashion (*id.* at 4.).

was frequently advised that Kaiser viewed her job performance as unacceptable, any claimed gaps in additional communications reflecting the same evaluation do not alter the Court's analysis. To the extent Plaintiff advances these points as evidence of claimed procedural irregularities in Kaiser's performance evaluation, for the reasons explained above and in the Recommendation, this evidence does present a genuine dispute that Kaiser's reason(s) for termination were a pretext for discrimination or retaliation, and could at most show that Kaiser's decision was ultimately unwise, a bad business judgment, or unfair in a general way not connected to Plaintiff's race.

5.  Lack of Responsiveness to Plaintiff's Complaints

Plaintiff also points to materials tending to show that she lodged multiple complaints with Kaiser regarding Ms. Henderson, and arguably showing that Kaiser was unresponsive to these complaints. (*See* ECF No. 75 at 4; ECF No. 75-5; ECF No. 48-30.) As addressed above, however, even treating Plaintiff's allegations regarding Ms. Henderson's conduct as true, this evidence of an alleged lack of responsiveness does not show that any actions taken by Ms. Henderson or others at Kaiser were due to Plaintiff's race. Although Plaintiff has claimed other employees were treated better than she was, she cites no evidence that could prove this claim, and admits that for the most part she does not know how other employees were treated, including whether they were similarly reprimanded by Ms. Henderson. (ECF No. 40-3 at 54.)

6.  Dispute Regarding Plaintiff's Job Performance

Plaintiff raises points arguably supporting the view that her job performance was better than Kaiser claims. Plaintiff alleges that Ms. Henderson "was concealing Plaintiff's work accomplishments" (ECF No. 75 at 5), and she cites evidence which she argues

shows the true nature of her work performance.  Even if the Court were to accept

materials first submitted with Plaintiff's Objection to arguably support these contentions,

or to navigate voluminous materials on its own, these arguments again show, at most,

that Kaiser was mistaken in its evaluation of Plaintiff's job performance.  This does not,

by itself, suffice to raise a triable issue of fact that Kaiser discriminated against Plaintiff

because of race, or that its reasons for termination were pretextual.  *See supra*, Part.

III.A.

      6.    <u>Additional FMLA Narrative</u>

      Plaintiff's Objection provides additional narrative regarding the chronology of her

FMLA leave request, and the reasons for it.  (ECF No. 75 at 8–9.)  As addressed by the

Recommendation, the dispositive facts regarding Plaintiff's FMLA claims are that the

undisputed record shows that Kaiser's decision to terminate Plaintiff was made *before*

Plaintiff requested FMLA leave, and that her request was granted, albeit retroactively.

The additional details regarding the chronology of when Plaintiff inquired about FMLA

leave and the nature of her request do not alter the analysis of her FMLA claims.

      7.    <u>Claim that Plaintiff's PIP or Performance Review Were Retaliatory</u>

      Plaintiff also objects that "[t]he PIP was administered in retaliation" for her internal

complaints regarding Ms. Henderson.  Initially, the Court is disinclined to consider

evidence submitted by Plaintiff for the first time with her Objection.  This is particularly

true here, given the multiple opportunities Plaintiff was given to submit briefing and

evidentiary materials in opposition to Defendant's Motion, and the fact that she did

submit voluminous materials at that time.  (*See* ECF No. 75 at 6; ECF No. 75-1; ECF No.

76; ECF Nos. 42 & 48.)  In particular, to the extent, if any, that Plaintiff's Objection seeks

19

to raise a claim that she has direct evidence of retaliatory intent, rather than indirect evidence subject to analysis under *McDonnell Douglas*, the Court views any such argument as having been waived.  *Marshall*, 75 F.3d at 1426 ("Issues raised for the first time in objections to the magistrate's recommendation are deemed waived.")

As addressed by the Recommendation and above, even assuming that Plaintiff's evidence could show a causal connection between her complaints and her termination, it cannot defeat Kaiser's showing that it had a valid, non pre-textual reason for Plaintiff's termination.  Even if the PIP itself could be shown to have been retaliatory, Plaintiff's ultimate discharge was based on non-pretextual performance concerns.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Plaintiff's Objection (ECF No. 75) to the Magistrate Judge's Recommendation (ECF No. 73) is OVERRULED;

2.    The Magistrate Judge's Recommendation (ECF No. 73) IS ADOPTED in its entirety;

3.    Defendant's Motion for Summary Judgment (ECF No. 40) is GRANTED;

4.    The trial currently set to commence on January 22, 2018, and the Final Trial Preparation Conference set for January 5, 2018 are hereby VACATED;

6.    The Clerk shall ENTER FINAL JUDGMENT in favor of Defendant, Kaiser Foundation Hospitals Technology Risk Office, against all of Plaintiff's claims; and,

5.    Defendant shall have its costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 22nd day of December, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge